UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BELINDA BARBIERI,

Plaintiff,

- against -

LEGG MASON, INC., LEGG MASON & CO., LLC, FRANKLIN RESOURCES, INC., *d/b/a/* FRANKLIN TEMPLETON, its successor in interest,

Defendants.

**MEMORANDUM ORDER & OPINION**

21 Civ. 5231 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Plaintiff Belinda Barbieri – a former product marketing employee at Legg Mason & Co., LLC brings this action against Defendants Legg Mason, Inc., Legg Mason & Co., LLC (collectively, the "Legg Mason Defendants"), and Franklin Resources, Inc. (Cmplt. (Dkt. No. 1))[1] The Complaint alleges, inter alia, that Defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA") and Connecticut state law by improperly classifying her as a temporary employee and refusing to award her the severance benefits afforded to "full-time permanent employees" under Legg Mason's Severance Plan. (Id. ¶ 1, 7)

Defendants have moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Def. Mot. (Dkt. No. 21)) For the reasons stated below, Defendants' motion will be granted in part and denied in part.

[1] The page numbers of documents referenced in this opinion correspond to the page numbers designated by this District's Electronic Case Filing ("ECF") system.

## BACKGROUND

Plaintiff Belinda Barbieri "is an adult who resides in Fairfield County, Connecticut."[2] (Cmplt. (Dkt. No. 1) ¶ 13)

Defendant Legg Mason, Inc. "is a Delaware corporation," and Defendant Legg Mason & Co, LLC is "a Maryland Limited Liability Company." (Id. ¶¶ 16-17) Both Legg Mason defendants are "headquartered in Baltimore[,] Maryland with a principal place of business . . . at 620 8th Avenue, Suite 49, New York[,] New York 10018." (Id.)

Defendant Franklin Resources, Inc. "is a Delaware corporation" that does business as Franklin Templeton. (Id. ¶ 18) Franklin Resources, Inc. ("Franklin") "is headquartered in San Mateo[,] California with a principal place of business within the State of New York at Fiduciary Trust Company International, 280 Park Avenue, New York, NY 10017." (Id.)

## I. FACTS

### A. Plaintiff's Offer Letter

On February 22, 2017, Defendant Legg Mason & Co., LLC sent Plaintiff an offer of employment (the "Offer Letter").[3] (Cmplt. (Dkt. No. 1) ¶ 25; Legg Mason Feb. 22, 2017 Offer Ltr. (attached to Pltf. Aug. 26, 2021 Ltr. (Dkt. No. 19) at 6))

---

[2] The following facts are drawn from the Complaint, documents incorporated by reference, and documents that are "integral" to the Complaint. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 110-11 (2d Cir. 2010). "[A] document may only be considered 'integral' to a complaint in a 'narrow set of circumstances, where the plaintiff relies heavily on the document's terms and effect in pleading his claims and there is no serious dispute as to the document's authenticity.'" K.W. on behalf of K.A. v. City of New York, 177 F.4th 127, 138 (2d Cir. 2026) (quoting United States ex rel. Foreman v. AECOM, 19 F.4th 85, 107 (2d Cir. 2021)).

[3] Although Plaintiff concedes that the Offer Letter is "integral to [the] Complaint," she contends that this Court should not consider it. (Pltf. Opp. (Dkt. No. 29) at 9-10) According to Plaintiff, "without discovery it is impossible to tell whether [it] [is a] valid document[] and/or whether there is additional relevant evidence associated with th[e] document[]." (Id.) But Plaintiff

In the Offer Letter, Defendant Legg Mason & Co., LLC "offer[s] to employ [Plaintiff] as a temporary employee with the Product Marketing team in Global Marketing." (Id.) The Offer Letter further states: "Your assignment is temporary, with an exact end date to be determined, with the option to extend at the same rate and the ability to terminate at any time." (Id.) As to payment and benefits, the Offer Letter sets Plaintiff's hourly rate at $85.00 and her overtime rate at $127.50. (Id.) The Offer Letter also states that Plaintiff "may be eligible for certain Company benefits, depending on the number of hours [she] work[s]." (Id.)[4]

**B. Plaintiff's Employment at Legg Mason**

Plaintiff worked in "Defendants' offices in Stamford, Connecticut" from February 22, 2017 to August 2020.[5] (Cmplt. (Dkt. No. 1) ¶¶ 25-27) Defendants paid Plaintiff a standard hourly rate of $85.00 and an overtime hourly rate of $127.50 during this time, in accordance with the Offer Letter. (Id. ¶ 26; Legg Mason Feb. 22, 2017 Offer Ltr. (attached to Pltf. Aug. 26, 2021 Ltr. (Dkt. No. 19) at 6))

---

cannot assert that there is a "serious dispute as to the document's authenticity," K.W., 177 F.4th at 138, because she relies on portions of the Offer Letter in her Complaint. (See Cmplt. (Dkt. No. 1) ¶¶ 25-27 (referencing terms of the Offer Letter, including Defendants' hourly rate, overtime rate, non-exempt status, and classification of Plaintiff as a "temporary employee")) Indeed, Plaintiff provided the Court with a copy of the Offer Letter in connection with her pre-motion letter, in which she argues that the Offer Letter justifies the rejection of any motion to dismiss. (Legg Mason Feb. 22, 2017 Offer Ltr. (attached to Pltf. Aug. 26, 2021 Ltr. (Dkt. No. 19) at 6-7); Pltf. Aug. 26, 2021 Ltr. (Dkt. No. 19) at 2) Accordingly, this Court will consider the Offer Letter in resolving the pending motion to dismiss.

[4] The Offer Letter Plaintiff submitted to the Court has a line at the bottom for Plaintiff to acknowledge and accept the terms of the Offer Letter. The Offer Letter submitted to the Court has not been signed by Plaintiff. (Legg Mason Feb. 22, 2017 Offer Ltr. (attached to Pltf. Aug. 26, 2021 Ltr. (Dkt. No. 19) at 6-7) Plaintiff has not stated either in the Complaint or elsewhere whether or when she signed the Offer Letter.

[5] The Complaint frequently refers to "Defendants" in general terms without distinguishing between the individual Defendants. Such group pleading is improper.

Plaintiff "was fully integrated into the Product Marketing team" during her tenure, and she "perform[ed] tasks as a full-time permanent employee." (Cmplt. (Dkt. No. 1) ¶¶ 28-29) For example, Plaintiff was staffed on multiple projects at a time, including certain "highly confidential matters" and reports for "the Chief Marketing Officer." (Id. ¶ 30; see also id. ¶¶ 31-32 (listing other tasks performed by Plaintiff that were "not usually given to temporary employees")) Plaintiff was also "assigned a permanent office space." (Id. ¶ 40)

Plaintiff further alleges that "Defendants treated Plaintiff as a full-time permanent employee" during her tenure. (Id. ¶ 34) Plaintiff's employment at Legg Mason was governed by the Company's "Employee Handbook and . . . Policies and Procedures like other full-time permanent employees," and Legg Mason required her to "log her time and expenses into [its] payroll system like full-time permanent employees." (Id. ¶¶ 35-37)

According to Plaintiff,

> Defendants' officers and managers considered Plaintiff a full-time permanent employee and explicitly told her that she was a full-time permanent employee. In fact, Defendants' officers and managers promised her that they would correct Defendants' improper misclassification as a temporary employee but failed to do so.

(Id. ¶ 33)

### C. Legg Mason Employee Benefit Plans and Policies

Legg Mason offered and administered five employee benefit plans for "full-time permanent employees": (1) "a 401K Plan"; (2) "an Employee Stock Purchase Plan"; (3) "a Paid Time Off Policy"; (4) a "Vacation Leave Policy"; and (5) "a Severance Plan and Benefits Program" (the "Severance Plan").. (Id. ¶¶ 46-47)

Legg Mason also "established and maintained various personnel policies and procedures" relating to "(a) Paid Holidays, (b) 401(k) plan, (c) Annual Bonuses, (d) Employee

Stock Option Plan, (e) Retention, (f) upon Sale Retention Bonus, (f) COBRA Reimbursement, (g) Severance[,] (h) Severance Stub Payment, (i) Merit Increases, (j) Out Placement Services, and (k) Remote Working Bonus." (Id. ¶ 111)

### D. Plaintiff Requests the Same Benefits Afforded to "Full-Time Employees"

On April 16, 2020, Defendant Franklin Resources, Inc. "acquired Defendant Legg Mason, Inc." (Id. ¶ 55) Plaintiff pleads on information and belief that Franklin terminated several employees following the acquisition (id. ¶¶ 56-57), and that "full-time permanent employees were provided severance benefits under Defendants' Severance Plan and additional separation and severance benefits . . . as a result of the Merger." (Id. ¶ 58)

"On July 29, 2020, Plaintiff requested the same benefits as [those provided to] full-time permanent employees."[6] (Id. ¶ 45)

### E. Plaintiff's Employment is Terminated

"Defendants' Human Resources Employee" denied Plaintiff's request on August 14, 2020, because Defendants had classified Plaintiff as a "'temporary' employee." (Id.) Because of this classification, "Plaintiff was not entitled to the benefits that full-time permanent employees were afforded." (Id.)

During August 2020, "Defendants" terminated Plaintiff's employment. (Id. ¶¶ 7, 27, 117) Plaintiff did not receive the benefits and payments owed to eligible employees under the Severance Plan. (Id. ¶¶ 58, 60)

---

[6] The Complaint does not specify to whom Plaintiff made this request.

## II. PROCEDURAL HISTORY

The Complaint was filed on June 11, 2021 as a putative collective action. (Id. ¶¶ 61-73) It asserts the following six causes of action against the Defendants:

Count I alleges a claim under ERISA §502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) for misclassifying Plaintiff and collective members as temporary employees (id. ¶¶ 74-84);

Count II alleges a claim for benefits under ERISA §502(a)(1) (id. ¶¶ 85-91);

Count III alleges a breach of fiduciary duty claim for misclassifying Plaintiff as temporary employees in violation of ERISA §502(a)(1) (id. ¶¶ 92-96);

Count IV alleges a claim for overtime compensation under the Fair Labor Standards Act, §207(a)(1) (id. ¶¶ 97-102);

Count V alleges a claim for overtime compensation under Connecticut law (id. ¶¶ 103-09); and

Count VI alleges a claim for wages "and other fringe benefits" under Connecticut law (id. ¶¶ 110-120).

In an August 23, 2021 letter, Defendants request a pre-motion conference regarding an anticipated motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 18) In an August 26, 2021 letter, Plaintiff argues that the Court should deny Defendants leave to file a motion to dismiss. (Dkt. No. 19) In her opposition letter, Plaintiff discusses and attaches the Offer Letter (see id. at 2; Legg Mason Feb. 22, 2017 Offer Ltr. (attached to Pltf. Aug. 26, 2021 Ltr. (Dkt. No. 19) at 6-7)), and also quotes from (but does not attach) two employee benefit plans – namely, the 401(k) Plan and the Severance Plan. (Id. (arguing that the Complaint "focuses on" these "patently ambiguous" employee benefit plans, and that the Complaint's sufficiently alleged ERISA violations "preclude a pre-Answer motion to dismiss")) On September 24, 2021, this Court granted Defendants leave to file a motion to dismiss. (Dkt. No. 20)

Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) on October 14, 2021. (Dkt. No. 21) Plaintiff filed her opposition on November 4, 2021 (Dkt. No. 29), and Defendants replied on November 11, 2021. (Dkt. No. 25)

Plaintiff states in her opposition that she is "withdrawing the claims set forth in Count[s] I, III, IV, and V." (Pltf. Opp. (Dkt. No. 29) at 6 n.1) Accordingly, those claims will be dismissed.

## DISCUSSION

### I. RULE 12(b)(6) STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007)). "In considering a motion to dismiss[,] . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle N.E., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to establish entitlement to relief. Iqbal, 556 U.S. at 678.

In resolving a motion to dismiss, a court may "consider . . . the complaint and any documents attached thereto or incorporated by reference." Bldg. Indus. Elec. Contractors Ass'n v. City of N.Y., 678 F.3d 184, 187 (2d Cir. 2012) (citation and quotation marks omitted). Additionally, "[w]here a document is not incorporated by reference, the court may never[the]less consider it where . . . the document [is] 'integral' to the complaint." DiFolco, 622 F.3d at 110-111 (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)). "[A] document may only be considered 'integral' to a complaint in a 'narrow set of circumstances, where the plaintiff relies heavily on the document's terms and effect in pleading his claims and there is no serious dispute as to the document's authenticity.'" K.W., 177 F.4th at 138 (quoting AECOM, 19 F.4th at 107). "Courts . . . routinely consider employee benefit plan documents to be incorporated by reference into complaints implicating ERISA." Polanco v. WPP Grp. USA, Inc., No. 24-CV-9548 (JGK), 2026 WL 1099370, at *2 (S.D.N.Y. Apr. 22, 2026) (citations omitted)).

It is well established that "'[i]f a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true.'" Gray v. Wesco Aircraft Holdings, Inc., 454 F. Supp. 3d 366, 383 (S.D.N.Y. 2020) (quoting TufAmerica, Inc. v. Diamond, 968 F. Supp. 2d 588 592 (S.D.N.Y. 2013)).

## II. ANALYSIS

Plaintiff's remaining two claims against Defendants are for (1) denial of benefits, in violation of ERISA § 502(a)(1); and (2) denial of "paid leave, fringe benefits, bonuses, merit increases, reimbursements and other services," in violation of Conn. Gen. Stat. §§ 31-72 and 31-76k. (Cmplt. (Dkt. No. 1) ¶¶ 85-91, 110-20)

### A. Whether Employee Benefit Plans Referenced in the Complaint May Be Considered

As a threshold matter, the parties dispute whether this Court should consider certain employee benefit plans referenced in the Complaint in resolving the pending motion to dismiss. Defendants submitted copies of the 401(k) Plan and Severance Plan referenced in the Complaint in connection with their moving brief (see VerGow Decl., Ex. C (401(k) Plan) (Dkt. No. 27); VerGow Decl., Ex. D (Severance Plan) (Dkt. No. 27-1)),[7] and argue that this Court should consider both documents "[b]ecause these alleged plans and policies are integral to the [C]omplaint and essential to plaintiff's claims." (Def. Br. (Dkt. No. 22) at 10 n.6 (citation omitted)) Defendants also point out that Plaintiff has these plan documents, and quoted from them in her August 26, 2021 letter (Dkt. No. 19) opposing Defendants' application for leave to move to dismiss. (Def. Br. (Dkt. No. 22) at 14 n.11; see also Pltf. Aug. 26, 2021 Ltr. (Dkt. No. 19) at 2 (quoting from the 401(k) Plan and Severance Plan))

Plaintiff – for her part – admits that the Severance Plan and 401(k) Plan referenced in the Complaint are "integral to [the] Complaint," but nonetheless contends that it would be "inappropriate" for this Court to consider these plans. (Pltf. Opp. (Dkt. No. 29) at 9-10) According to Plaintiff, "it is impossible to tell whether [the Severance Plan and 401(k) Plan supplied by the Defendants] are valid documents and/or whether there is additional relevant evidence associated with those documents." (Id.)

While asserting that the Court should not consider the Severance Plan and the 401(k) Plan in resolving Defendants' motion to dismiss, Plaintiff argues that this Court should

[7] When Defendants filed the instant motion, they sought leave to file these plan documents under seal (Dkt. No. 26), and filed the documents preliminarily under seal. (Dkt. Nos. 27, 27-1) This Court later denied the motion to seal the plan documents (Dkt. No. 35), and now cites to the plan documents as they appear on the docket.

consider the Employee Stock Purchase Plan referenced in the Complaint in resolving the pending motion. (Id. at 6, 11, 18, 25 (citations omitted); see also Cmplt. (Dkt. No. 1) ¶¶ 2, 4, 47, 111 (referencing the Employee Stock Purchase Plan and "Employee Stock Option Plan")) Plaintiff submitted a copy of the Employee Stock Purchase Plan in connection with her opposition brief. (Ehrlich Decl., Ex. 1 (Stock Purchase Plan) (Dkt. No. 30-1)) Defendants, for their part, take no position as to whether this Court should consider the Employee Stock Purchase Plan in reviewing the pending motion to dismiss.

This Court will consider the plan documents submitted by the parties. As discussed above, a court may consider documents that are "incorporated by reference" or "integral" to a complaint so long as there is no serious dispute as to the documents' authenticity. DiFolco, 622 F.3d at 110-111 (citations and quotation marks omitted). Here, Plaintiff does not actually assert that the plan documents supplied by Defendants are not authentic. She simply states that "it is impossible [for her] to tell" whether these documents are authentic. (Pltf. Opp. (Dkt. No. 29) at 9-10) But as Defendants point out, Plaintiff has copies of the 401(k) Plan and Severance Plan in her possession; she quoted from these documents in her pre-motion letter asking this Court to deny Defendants' leave to file a motion to dismiss.[8] (See Pltf. Aug. 26, 2021 Ltr. (Dkt. No. 19) at 2) Accordingly, Plaintiff could easily have determined whether the plan documents supplied by Defendants are authentic. Given that Plaintiff has not alleged that the 401(k) Plan and Severance Plan supplied by the Defendants differ from the plan documents in her possession, Plaintiff has not raised a "serious dispute as to the document[s'] authenticity.'"

[8] Indeed, in her letter, Plaintiff asks this Court to find that the Complaint adequately alleges a claim under ERISA for denial of benefits because of certain terms in these plan documents. (Id.) Plaintiff cannot both rely on these plan documents in the Complaint and in correspondence to the Court and argue that Defendants should be precluded from relying on these same plan documents.

K.W., 177 F.4th at 138 (quoting AECOM, 19 F.4th at 107). This Court will therefore consider the 401(k) Plan, the Severance Plan, and the Employee Stock Purchase Plan in resolving the motion to dismiss, because these documents are both referenced in – and integral to – the Complaint. See Guo v. IBM 401(k) Plus Plan, 95 F. Supp. 3d 512, 522 (S.D.N.Y. 2015) (considering certain ERISA plan documents when resolving a motion to dismiss because plaintiff had the plan documents in her possession and relied on the plan documents in drafting the complaint).[9]

## III. DENIAL OF BENEFITS UNDER ERISA

In moving to dismiss Count II – Plaintiff's claim for benefits under ERISA § 502(a)(1), Defendants argue that Plaintiff has not adequately stated a claim for denial of benefits under ERISA, because she "concedes that [Defendants] classified [her] as a 'temporary employee,'" and "the plans under which she seeks benefits exclude 'temporary employees.'" (Def. Br. (Dkt. No. 22) at 7, 11 (first quoting Cmplt. (Dkt. No. 1) ¶ 27)) Plaintiff responds that while the Offer Letter "label[s] her as a temporary employee" (Pltf. Opp. (Dkt. No. 29) at 10 (citation omitted)), the Complaint alleges that she actually worked "as a full-time, permanent employee[] [who] should have received benefits under the Employee Benefit plans." (Id. at 11 (citing Cmplt. (Dkt. No. 1) ¶¶ 2-3, 49-50, 79))

[9] The parties also dispute whether this Court should consider email correspondence between Plaintiff and Brenna Takacs. (VerGow Decl., Ex. B (Email Thread) (Dkt. No. 23-2)) Given the context, the Court understands Takacs to be a Franklin employee. In a July 29, 2020 email to Takacs, Plaintiff requests that she receive the same benefits afforded to full-time employees. Takacs denies Plaintiff's request on August 14, 2020. (Id. at 2) The Complaint references this email exchange. (Cmplt. (Dkt. No. 1) ¶ 45 (alleging that Plaintiff made this request on July 29, 2020, but that her request was rejected by "Defendants' Human Resources Employee on August 14, 2020")) Because this email exchange is explicitly referenced in the Complaint, it will be considered in connection with the instant motion.

### A. Applicable Law

#### 1. Who May Bring a Claim under ERISA for Wrongful Denial of Benefits

"ERISA's comprehensive regulatory scheme governs most employee benefit plans." Liberty Mut. Ins. Co. v. Donegan, 746 F.3d 497, 503 (2d Cir. 2014), aff'd sub nom. Gobeille v. Liberty Mut. Ins. Co., 577 U.S. 312 (2016). "The statute . . . seeks to make the benefits promised by an employer more secure by mandating certain oversight systems and other standard procedures." Gobeille, 577 U.S. at 320-21.

ERISA does not, however, "create any substantive entitlement to employer-provided health benefits or any other kind of welfare benefits." Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 82 (2d Cir. 2001) (quoting Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78 (1995)). "Nothing in ERISA requires employers to establish employee benefit plans." Lockheed Corp. v. Spink, 517 U.S. 882, 887 (1996). Moreover, ERISA does not "'mandate what kind of benefits employers must provide,'" and "employers have large leeway to design . . . [benefit] plans as they see fit." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 833 (2003) (quoting Spink, 517 U.S. at 887). "[N]othing prevents an employer from specifying that its benefit plans apply only to employees that meet particular criteria[]. . . ." Downes v. J.P. Morgan & Chase & Co., No. 03 Civ. 8991 (GEL), 2006 WL 1233939, at *2 (S.D.N.Y. May 8, 2006).

ERISA § 502(a)(1), codified at 29 U.S.C. § 1132(a)(1), authorizes "a participant or beneficiary" to bring suit to enforce the terms of a benefit plan. 29 U.S.C. § 1132(a)(1)(B). That section authorizes "a participant or beneficiary" to bring a civil suit to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Id.

"A 'participant' within the meaning of [ERISA] is 'any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan.'" L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc., 710 F.3d 57, 65 (2d Cir. 2013) (omission in original) (quoting 29 U.S.C. § 1002(7)). "'[T]o establish that he or she "may become eligible" for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future.'" Coan v. Kaufman, 457 F.3d 250, 255 (2d Cir. 2006) (quoting Firestone Tire & Rubber Co v. Bruch, 489 U.S. 101, 117 (1989)). Where a claimant is a former employee, he or she must establish either "a colorable claim to vested benefits" or "a reasonable expectation of returning to covered employment." Bulovic v. Both, 14 F. Supp. 3d 365, 380-83 (S.D.N.Y. 2014) (citation and quotation marks omitted).

"Beneficiary" is similarly defined under ERISA as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). This term is "'limited to persons designated by the participant, or by the terms of the plan.'" Bulovic, 14 F. Supp 3d at 382-83 (quoting Park v. Trs. of 1199 SEIU Health Care Emps. Pension Fund, 418 F. Supp. 2d 343, 350 (S.D.N.Y. 2005)).

In sum, to plead a prima facie case of denial of benefits under ERISA § 502(a), a complaint must plausibly allege that "(1) [a] plan is covered by ERISA, (2) plaintiff is a participant or beneficiary of the plan [within the meaning of ERISA], and (3) plaintiff was wrongfully denied [benefits] owed under the plan." Gordon Surgical Grp., P.C. v. Empire HealthChoice HMO, Inc., 724 F. Supp. 3d 158, 186 (S.D.N.Y. 2024) (citation and quotation marks omitted).

**2. Interpretation of ERISA Plans**

"The Second Circuit has stated that . . . a claim [for benefits under ERISA] is essentially a contract claim asserting rights under a benefit plan." Irvins v. Metro. Museum of Art, No. 15-CV-5180 (RJS), 2016 WL 4508364, at *2 (S.D.N.Y. Aug. 26, 2016) (citing Wilkins v. Mason Tenders Dist. Council Pension Fund, 445 F.3d 572, 583 (2d Cir. 2006)). "As such, to enforce [any] rights [in an ERISA plan], 'the participant must first qualify for the benefits provided in that plan.'" Id. (quoting Wilkins, 445 F.3d at 583)). "[T]he Second Circuit applies rules of contract law to ERISA plans, [such that] a court must not rewrite, under the guise of interpretation, a term of a contract when the term is clear and unambiguous." Neuroaxis Neurosurgical Assocs., PC v. Costco Wholesale Co., 919 F. Supp. 2d 345, 352 (S.D.N.Y. 2013) (citation and quotation marks omitted).

Whether "ERISA plan language is ambiguous . . . is resolved by reference to the contract alone" and "is a threshold question to be decided by the court as a matter of law." Novick v. Metro. Life Ins. Co., 764 F. Supp. 2d 653, 666 (S.D.N.Y. 2011) (citations and quotation marks omitted). "Language in a plan 'is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire agreement.'" Rappaport v. Guardian Life Ins. Co. of Am., 782 F. Supp. 3d 109, 119 (S.D.N.Y. 2025) (further citations and alteration omitted) (quoting Critchlow v. First UNUM Life Ins. Co. of Am., 378 F.3d 246, 256 (2d Cir. 2004)). On the other hand, "a court may not create an ambiguity by straining a[n] [ERISA plan]'s language beyond its reasonable and ordinary meaning." Bacquie v. Liberty Mut. Ins. Co., 435 F. Supp. 2d 318, 327 (S.D.N.Y. 2006) (citation and quotation marks omitted). "'Nor may an ambiguity be found where the [ERISA plan] has a definite meaning, and where no reasonable basis exists for a difference of

opinion about that meaning.'" Id. (quoting Bras v. Am. Film Techs., Inc., 987 F.2d 142, 149 (2d Cir. 1993)).

As with breach of contract claims in general, "[u]nless for some reason an ambiguity must be construed against the plaintiff, a claim predicated on a materially ambiguous [ERISA plan] term is not dismissible on the pleadings." See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 178 (2d Cir. 2004) (noting this well-established contract principle); see also Berg v. Empire Blue Cross & Blue Shield, 105 F. Supp. 2d 121, 127-29 (E.D.N.Y. 2000) (denying motion to dismiss an ERISA claim for benefits where plan provisions were ambiguous); McCulloch v. Bd. of Trs. of SEIU Affiliates Officers & Emps. Pension Plan, No. 17 CIV. 3927 (PGG), 2018 WL 10602192, at *13 (S.D.N.Y. Sept. 29, 2018) (denying motion to dismiss ERISA claim for benefits where "the terms of the Plan" in question were "ambiguous as to whether they appl[ied] [to plaintiff]"). Put differently, a court will not dismiss an ERISA claim for wrongful denial of benefits where the ERISA plan at issue "is ambiguous as applied to a particular set of facts." See Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC, 692 F.3d 42, 56 (2d Cir. 2012) (citation and quotation marks omitted); Roganti v. Metro. Life Ins. Co., No. 12 CIV. 0161 PAE, 2012 WL 2324476, at *7 (S.D.N.Y. June 18, 2012) ("[T]he court cannot resolve, on a motion to dismiss, the disputed factual issue of whether [a plaintiff's] award represented back pay [within the meaning of an ERISA plan].").

**B. Analysis**

Here, the parties agree that Defendants "classified plaintiff as a 'temporary employee'" (see Def. Br. (Dkt. No. 22) at 7 (quoting Cmplt. (Dkt. No. 1) ¶ 27)), but they disagree as to whether this classification renders Plaintiff "[in]eligible to receive a benefit" from

Defendants' employee benefit plans. See L.I. Head Start Child Dev. Servs., Inc.., 710 F.3d at 65 (an individual must be eligible to receive benefits to qualify as a "participant" under ERISA). As a result, they also disagree as to whether Plaintiff is owed any benefits under the employee benefit plans at issue. See Gordon Surgical Grp., P.C., 724 F. Supp. 3d at 186 (requiring plaintiff bringing a denial of benefits claim under ERISA to allege that he or she was "wrongfully denied [benefits] owed under the plan" (citation and quotation marks omitted)).

To adequately plead a wrongful denial of benefits claim under ERISA,[10] Plaintiff must plausibly allege that she was "eligible to receive a benefit" under one or more of the employee benefit plans referenced in the Complaint. See L.I. Head Start Child Dev. Servs., Inc., 710 F.3d at 65. The Court considers below – as to each of the employee benefit plans at issue – whether Plaintiff has met this standard.

**1. 401(k) Plan**

The Complaint asserts that Plaintiff was wrongfully denied benefits under Defendants' 401(k) Plan. (Cmplt. (Dkt. No. 1) ¶¶ 47-49, 88) As discussed above, Defendants have submitted a copy of the 401(k) Plan, and Plaintiff has not raised any issue as to the

---

[10] In a single sentence in Defendants' moving brief, Defendants assert that the benefit "plans [referenced in the Complaint] are not, in fact, governed by ERISA." (Def. Br. (Dkt. No. 22) at 15) This naked and entirely unsupported assertion is not sufficient to justify analysis by the Court. "[I]t is well-settled that a party's conclusory, single-sentence argument is insufficient to raise an issue in the first instance – even when[] . . . that sentence appears in the argument section of a brief." Mobil Cerro Negro Ltd. v. Bolivarian Republic of Venezuela, No. 14 CIV. 8163 (PAE), 2015 WL 14079006, at *2 (S.D.N.Y. Feb. 19, 2015) (collecting cases).

Moreover, certain language in the employee benefit plans at issue strongly indicates that the plans are ERISA plans. For example, Paragraph 5.1 of the Severance Plan provides that "Legg Mason is hereby designated as the administrator of the plan (within the meaning of Section 3(16)(A) of ERISA)." (VerGow Decl., Ex. D (Severance Plan) (Dkt. No. 27-1) ¶ 5.1)

In any event, in the absence of appropriate briefing from Defendants, this Court assumes for purposes of Defendants' motion to dismiss that the employee benefit plans at issue are governed by ERISA.

authenticity of this document. (See VerGow Decl., Ex. C (401(k) Plan) (Dkt. No. 27)) Accordingly, this Court looks to the terms of the 401(k) Plan referenced in the Complaint to assess whether Plaintiff has plausibly alleged that she is "owed [benefits] under the plan." See Gordon Surgical Grp., P.C., 724 F. Supp. 3d at 186 (citation and quotation marks omitted).[11]

The 401(k) Plan provides that any employee hired after January 1, 2015 "shall participate in the plan" as long as they are a "Covered Employee." (VerGow Decl., Ex. C (401(K) Plan) (Dkt. No. 27) art. III, § 3.1)) The 401(k) Plan defines "Covered Employee," in relevant part, as: "Any Employee, other than: (i) a Leased Employee, [and] (ii) any individual employed on a temporary, as needed, basis (including, by way of example, summer interns and individuals hired for specific short-term projects or to fill in for an absent regular employee. . . ." (Id. art. II, § 2.1)

The 401(k) Plan further provides that

> [t]he Plan is not intended to cover independent contractors or Leased Employees. Therefore, any individuals who occupy that status by virtue of oral or written agreements with the Company, or by virtue of the Company's internal procedures, classifications or determinations, shall not be deemed to be Covered Employees (or, for any other purpose of the Plan, be deemed to be common law employees of

---

[11] Courts in this Circuit regularly look to ERISA plan documents to determine whether a plaintiff has plausibly alleged that he or she is owed benefits under an ERISA plan. See, e.g., Rocco v. N.Y. State Teamsters Conf. Pension & Ret. Fund, 281 F.3d 62, 71 (2d Cir. 2002) (finding, based on the terms of an ERISA plan, that plaintiffs had not pled "a 'colorable claim' to [ERISA] benefits" and could not be considered participants of the ERISA plan at issue); Merrick v. UnitedHealth Grp. Inc., 175 F. Supp. 3d 110, 116-26 (S.D.N.Y. 2016) (finding that plaintiffs had not plausibly alleged that they were participants or beneficiaries of an ERISA plan based on the terms of that plan); Bulovic, 14 Supp. 3d at 383-90 (concluding that plaintiff was neither a participant nor a beneficiary of an ERISA plan because the terms of the plan showed that she lacked "a colorable claim to vested benefits"); Gary K. v. Anthem Blue Cross & Blue Shield, No. 1:24-CV-07878 (ALC), 2025 WL 2782409, at *5 (S.D.N.Y. Sept. 30, 2025) (examining the terms of ERISA plan referenced in complaint to determine whether plaintiff had plausibly alleged a wrongful denial of benefits); Caban v. N.Y.C. Dist. Council of Carpenters Pension Plan, No. 19-cv-6205 (JGK), 2020 WL 5774901, at *4 (S.D.N.Y. Sept. 28, 2020) (same); Romero v. Local Union 272, No. 1:15-CV-7583-GHW, 2016 WL 5376210, at *5 (S.D.N.Y. Sept. 26, 2016) (same); Irvins, 2016 WL 4508364, at *2 (same).

> the Company), notwithstanding any status determination by a court or government agency to the contrary.

(Id.)

Here, whether Plaintiff was a "Covered Employee" for purposes of the 401(k) Plan turns on the meaning of the phrase "employed on a temporary, as needed, basis." (See Cmplt. (Dkt. No. 1) ¶¶ 43, 45 (alleging that Plaintiff was entitled to benefits as a "full-time permanent employee who was misclassified as a temporary employee"))

Plaintiff contends that whether a worker is "employed on a temporary, as needed, basis" depends on the factual circumstances of that worker's employment, rather than any classification provided in that individual's employment contract. (See Pltf. Opp. (Dkt. No. 29) at 18-19) In this regard, Plaintiff notes that the 401(k) Plan's definition of "Covered Employee" states that individuals deemed "independent contractors or Leased Employees . . . by virtue of the Company's internal procedures, classifications, or determinations" are excluded from coverage. (See VerGow Decl., Ex. C (401(k) Plan) (Dkt. No. 27) art. II, § 2.1) According to Plaintiff, the failure to include any "reference to a temporary employee in that [provision]" means that Defendants' internal procedures, classifications, and determinations do not address whether a person is "employed on a temporary, as needed, basis." (Pltf. Opp. (Dkt. No. 29) at 19 (citation omitted))

Defendants argue, however, that the phrase "employed on a temporary, as needed, basis" refers to employees who have employment contracts that classify them as "temporary" employees. (See Def. Br. (Dkt. No. 22) at 14-15 (arguing that the phrase is not "ambiguous" and "explicitly exclude[s]" individuals such as Plaintiff who are classified in their employment contracts as temporary employees))

The Court finds that at this stage of the litigation Plaintiff has offered a reasonable interpretation of the phrase at issue. Indeed, the canon of expressio unius est exclusio alterius militates in favor of Plaintiff's interpretation. The 401(k) Plan's definition of "Covered Employee" says that whether an employee is an excluded independent contractor or leased employee turns in part on the Defendants' employment classifications. The 401(k) Plan does not contain any such provision with respect to the phrase "employed on a temporary, as needed, basis." (See VerGow Decl., Ex. C (401(k) Plan) (Dkt. No. 27) art. II, § 2.1)

And while the 401(k) Plan provides that "Covered Employee" does not cover "any individual employed on a temporary, as needed basis (including by way of example, summer interns and individuals hired for specific short-term projects or to fill in for an absent regular employee," the Complaint pleads facts suggesting that Plaintiff (1) was not hired on an "as needed basis"; (2) was hired for a position not comparable to that of a summer intern; and (3) was not hired for a "specific short term project[] or to fill in for an absent regular employee." (See id.) For example, the Complaint alleges that that Plaintiff "worked continuously" for Defendants over a three-and-a-half-year period, and that she "worked on many different projects simultaneously, interacted with many different clients, performed administrative tasks, and did everything a full-time permanent employee on the Product Marketing team did." (Cmplt. (Dkt. No. 1) ¶¶ 27, 29; see also id. ¶¶ 27-32)[12]

---

[12] Defendants do not address Plaintiff's interpretation of the "Covered Employee" provision or the nature of her duties and the tenure of her employment. They contend that the reference to "temporary" in her employment contract is dispositive. (Def. Reply (Dkt. No. 25) at 7; see also Def. Br. (Dkt. No. 22) at 10-11 (arguing that Defendants' classification of Plaintiff as a "temporary employee" suffices to render her ineligible for benefits under any of Defendants' ERISA plans, regardless of the Complaint's allegations that "she functioned as a 'permanent' employee based on various factors she considers relevant")) The term "temporary employee" is not necessarily co-extensive with someone "employed on a temporary, as needed, basis," however, such as a "summer intern," someone hired for a "specific short-term project," or

The Court concludes that Defendants have not demonstrated as a matter of law that the term "employed on a temporary, as needed, basis" – as used in the 401(k) Plan in defining "Covered Employee" – unambiguously excludes Plaintiff from coverage under the 401(k) Plan. Rappaport, 782 F. Supp. 3d at 119 (holding that a term is ambiguous where it is "is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire . . . agreement" (citations and quotation marks omitted)). The Court finds that (1) the 401(k) Plan's definition of "Covered Employee" is ambiguous as applied to Plaintiff's circumstances; and (2) Plaintiff has plausibly alleged that she qualifies as a "Covered Employee" under the 401(k) Plan, and was a participant of the 401(k) Plan who was denied benefits "owed under the plan." See Gordon Surgical Grp., P.C., 724 F. Supp. 3d at 186 (citation and quotation marks omitted).[13] Accordingly, Defendants' motion to dismiss Count II will be denied to the extent Count II is premised on the 401(k) Plan. See Eternity Global Master Fund Ltd., 75 F.3d at 178 ("[A] claim predicated on a materially ambiguous [ERISA plan] term is not dismissible on the pleadings.").

**2. Severance Plan**

The Complaint alleges that Plaintiff was improperly denied benefits under Defendants' Severance Plan. (Cmplt. (Dkt. No. 1) ¶¶ 47-49, 88) As with the 401(k) Plan, Defendants have submitted a copy of the Severance Plan and Plaintiff has not disputed that document's authenticity. (See VerGow Decl., Ex. D (Severance Plan) (Dkt. No. 27-1))

---

someone hired to "fill in for an absent regular employee." (VerGow Decl., Ex. C (401(k) Plan) (Dkt. No. 27) art. III, § 3.1)

[13] Defendants have not argued that the ERISA plan administrator is entitled to discretion in interpreting the terms of the ERISA plans at issue, and that the plan administrator's decisions as to Plaintiff's eligibility were not arbitrary and capricious. As noted above, Defendants have instead asserted in a single sentence in their moving brief that the plans at issue are not ERISA plans. (See Def. Br. (Dkt. No. 22) at 15)

Accordingly, this Court has examined the terms of the Severance Plan in determining whether Plaintiff has adequately stated a claim for benefits under that plan. See Gordon Surgical Grp., P.C., 724 F. Supp. 3d at 186 (citation and quotation marks omitted).

Sections 2.8 and 2.12 of the Severance Plan state that certain categories of employees are excluded from participating in the Severance Plan. (VerGow Decl., Ex. D (Severance Plan) (Dkt. No. 27-1) art. II, §§ 2.8, 2.12) As relevant here, Section 2.8 excludes from participation any Legg Mason & Co., LLC employee who

> performs services for the Company on a temporary basis or contract basis (by way of written contract) including, but not limited to, any individual categorized by the Company as a temporary employee, seasonal worker, an intern or individual with an identified employment end date (even if such date has elapsed or been extended), in all events as determined by the Plan Administrator in its sole discretion.

(Id. art. II, § 2.8)

Plaintiff contends that she is not an excluded employee under Section 2.8 because her employment had no "'identified employment end date.'" (Pltf. Opp. (Dkt. No. 29) at 14 (quoting VerGow Decl., Ex. D (Severance Plan) (Dkt. No. 27-1) art. II, § 2.8)) According to Plaintiff's reading of Section 2.8, the no "identified employment end date" qualifying clause applies to the entire list of examples of employees who "'perform[] services for the Company on a temporary or contract basis.'" (Id.)

Plaintiff's reading of Section 2.8 "strain[s] [the] [Severance Plan]'s language beyond its reasonable and ordinary meaning." Bacquie, 435 F. Supp. 2d at 327 (citation and quotation marks omitted). The limiting clause ("with an identified employment end date") clearly modifies the word "individual" that appears at the end of the list, and immediately before the limiting clause.

Applying the limiting clause to the three other types of workers listed – "temporary employee, seasonal worker, [and] intern" – would run contrary to common grammar. See Lockhart v. United States, 577 U.S. 347, 351 (2016) ("[A] limiting clause or phrase should ordinarily be read as modifying only the noun or phrase that it immediately follows" (citations, quotation marks, and alteration omitted)). And applying the limiting clause to all other nouns in the list would render those other nouns superfluous. See Olin Corp. v. Am. Home Assur. Co., 704 F.3d 89, 99 (2d Cir. 2012) ("Any interpretation of a contract that 'has the effect of rendering at least one clause superfluous or meaningless . . . will be avoided if possible.'" (quoting Lasalle Bank Nat'l Ass'n v. Nomura Asset Cap. Corp., 424 F.3d 195, 206 (2d Cir. 2005)). That is because any "temporary employee," "seasonal worker," or "intern" who has "an identified employment end date" is also an "individual with an identified employment end date." (See VerGow Decl., Ex. D (Severance Plan) (Dkt. No. 27-1) art. II, § 2.8)

Indeed, the only reasonable interpretation of Section 2.8 is that it excludes from participation in the Severance Plan "any individual categorized by the Company as a temporary employee" regardless of whether they have "an identified employment end date." Put differently, the limiting clause "with an identified employment end date" modifies the word "individual," and not "temporary employee," "seasonal worker," or "intern." (Id.)

Given this unambiguous language in Section 2.8, Plaintiff has not plausibly alleged that she was "a participant or beneficiary" of the Severance Plan. See Gordon, 724 F. Supp. 3d at 186 (citation and quotation marks omitted). The Complaint alleges that "Defendants classified Plaintiff as a temporary employee" (Cmplt. (Dkt. No. 1) ¶ 27), and Plaintiff's Offer Letter states that Legg Mason & Co., LLC has "offered to employ [Plaintiff] as a temporary employee." (Legg Mason Feb. 22, 2017 Offer Ltr. (attached to Pltf. Aug. 26, 2021 Ltr. (Dkt. No.

19) at 6)) The Offer Letter also states that Plaintiff's "assignment is temporary." (Id.) Because Plaintiff was "categorized by the Company as a temporary employee," she is not eligible to participate in the Severance Plan under Section 2.11 (VerGow Decl., Ex. D (Severance Plan) (Dkt. No. 27-1) art. II, § 2.8), and cannot plausibly allege that she is entitled to benefits under the Severance Plan.

Accordingly, Defendants' motion to dismiss Count II will be granted to the extent that Plaintiff's claim for denial of benefits under ERISA is premised on the Severance Plan.

**3. Employee Stock Purchase Plan**

The Complaint also asserts that Plaintiff was improperly denied benefits under the Employee Stock Purchase Plan. (Cmplt. (Dkt. No. 1) ¶¶ 47-49, 88) Defendants contend that Plaintiff is not entitled to benefits under the Employee Stock Purchase Plan because that plan "exclude[s] temporary employees." (See Def. Br. (Dkt. No. 22) at 15)

Plaintiff submitted a copy of the Employee Stock Purchase Plan with her opposition to Defendants' motion to dismiss. (Ehrlich Decl., Ex. 1 (Stock Purchase Plan) (Dkt. No. 30-1)) Defendants have not challenged the authenticity of that document. (See Def. Reply (Dkt. No. 25) at 12-13)) Accordingly, this Court has examined the terms of the Employee Stock Purchase Plan in determining whether Plaintiff has adequately stated a claim for benefits under that plan. See Gordon Surgical Grp., P.C., 724 F. Supp. 3d at 186 (citation and quotation marks omitted).

The Employee Stock Purchase Plan contains the following provision regarding eligibility:

> Any employee of the Company, or of any Participating Subsidiary, who is not an Excluded Employee shall be eligible to participate in the Plan (and shall be hereinafter referred to as an "Eligible Employee"). An Excluded Employee is any employee who would be an Eligible Employee but for the fact that:

(i) his customary employment is for 20 hours or less per week;

(ii) his customary employment is for not more than five months in any calendar year; or

(iii) he is a 5% or greater stockholder of the Company, within the meaning of Section 423(b) of the Code.

(Ehrlich Decl., Ex. 1 (Employee Stock Purchase Plan) (Dkt. No. 30-1) art. VI)

The eligibility provision of the Employee Stock Purchase Plan does not contain any mention of "temporary employees," much less explicitly exclude them, as Defendants assert. (See Def. Br. (Dkt. No. 22) at 15 (arguing that the Stock Purchase Plan, as well as the other employee benefit plans referenced in the Complaint, "exclude temporary employees, making plaintiff ineligible to participate in them")) And based on a review of the Stock Purchase Plan, it does not appear that any other provision of that plan excludes temporary employees. (Ehrlich Decl., Ex. 1 (Stock Purchase Plan) (Dkt. No. 30-1))

In their reply brief, Defendants contend – for the first time – that Plaintiff cannot assert a claim for benefits under the Employee Stock Purchase Plan because "plaintiff 'never formally filed for benefits' under the [plan]." (Def. Reply (Dkt. No. 25) at 13 (quoting Reid v. Supershuttle Int'l Inc., No. 08-CV-4854(JG)(VVP), 2010 WL 1049613, at *8 (E.D.N.Y. Mar. 22, 2010)) This Court will not consider arguments raised for the first time in a reply brief. Scott v. Westchester Cnty., 434 F. Supp. 3d 188, 196 (S.D.N.Y. 2020) ("[D]efendants improperly raise this argument for the first time in their reply brief. Therefore, the Court need not consider it." (citing Playboy Enterprises, Inc. v. Dumas, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997)).

The Court concludes that Plaintiff has adequately alleged that she was "a participant or beneficiary of the [Employee Stock Purchase] plan" who was ultimately "wrongfully denied [benefits] owed under the plan." See Gordon, 724 F. Supp. 3d at 186 (citation and quotation marks omitted). Accordingly, Defendants' motion to dismiss Count II

will be denied to the extent that it seeks dismissal of Plaintiff's claim for benefits under the Employee Stock Purchase Plan.

### 4. Claim for Paid Time Off and Vacation Leave

The Complaint also asserts that Plaintiff was wrongfully denied benefits owed under two other alleged ERISA plans: the Paid Time Off Policy (the "PTO Policy") and the Vacation Leave Policy. (Cmplt. (Dkt. No. 1) ¶¶ 47-49, 88) The parties have not supplied copies of either the PTO Policy or the Vacation Leave Policy.

This Court finds that Plaintiff has plausibly alleged that she was wrongfully denied benefits under the PTO Policy and the Vacation Leave Policy. To the extent that Defendants argue that these policies contain provisions excluding from participation all individuals classified as temporary employees, Defendants have identified no such provisions in either the PTO Policy or the Vacation Leave Policy. (See Def. Br. (Dkt. No. 22) at 13-15) Defendants' argument that Plaintiff cannot assert a claim for benefits under the PTO Policy and the Vacation Leave Policy because she has conceded that she was "classified in a category excluded from [these] benefits plan[s]" fares no better. (See id.) The Complaint does not plead that the PTO Policy and the Vacation Leave Policy – or any of the other alleged ERISA plans – exclude individuals classified as temporary employees from participating. The Complaint instead merely alleges that "[f]ull-time permanent employees . . . were eligible to participate in [the various employee benefit plans]" (Cmplt. (Dkt. No. 1) ¶ 49), and that Plaintiff was "in fact . . . [a] full-time permanent employee[]." (Id. ¶ 1; see also id. ¶¶ 17-29, 33, 43 (alleging facts that render Plaintiff's characterization plausible)). Accordingly, Plaintiff's statement in the Complaint that she was classified as a temporary employee does not defeat her claims for relief under the PTO Policy and the Vacation Leave Policy.

Defendants' motion to dismiss Count II will be denied to the extent it seeks dismissal of Plaintiff's claim for benefits under the PTO Policy and the Vacation Leave Policy.

## IV. CONNECTICUT LAW CLAIM

In Count VI of the Complaint, Plaintiff contends that – as a result of the alleged misclassification – she was improperly denied "paid leave, fringe benefits, wages, including bonuses, merit increases, reimbursements and other services" under Conn. Gen. Stat. §§ 31-72 and 31-76k.[14] (Cmplt. (Dkt. No. 1) ¶¶ 116, 118) Defendants contend that the Complaint does not plausibly state a claim for wages and fringe benefits under these Connecticut statutes. (Def. Br. (Dkt. No. 22) at 22-24)

### A. Applicable Law

Section 31-72 of the General Statutes of Connecticut "create[s] a civil cause of action for an employee to collect unpaid wages." Evans v. Tiger Claw, Inc., 173 Conn. App. 409, 419 (App. Ct. 2017). As relevant here, Section 31-72 provides that

> [w]hen any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive, or fails to compensate an employee in accordance with section 31-76k . . . , such employee . . . shall recover, in a civil action, (1) twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, or (2) if the employer establishes that the employer had a good faith belief that the underpayment of wages was in compliance with law, the full amount of such wages or compensation, with costs and such reasonable attorney's fees as may be allowed by the court. . . .

---

[14] While Count VI asserts that "Plaintiff and Collective Members are entitled to damages" under Connecticut law, Connecticut law does not authorize a plaintiff to bring actions for wages or fringe benefits on behalf of a collective. E.g., Aboah v. Fairfield Healthcare Servs., Inc., 662 F. Supp. 3d 192, 215 (D. Conn. 2023) ("In contrast to the FLSA, . . . the [Connecticut Wage Statute] does not have a provision for a collective action, which means that 'plaintiffs may pursue a traditional "opt-out" class action through class certification [under Rule 23] for their state law claims.'"); see also Rodriguez v. Kaiaffa, LLC, 337 Conn. 248, 267 & n. 16 (2020) (explaining that federal law provides for collective actions, in contrast to Connecticut state law (citations omitted)).

Conn. Gen. Stat. § 31-72. Section 31-72 "provide[s] remedial protections for those cases in which the employer-employee wage agreement is violated." Mytych v. May Dep't Stores Co., 260 Conn. 152, 162 (2002).

Section 31-72 authorizes two "different types of renumeration." Morales v. Pen Tec, Inc., 57 Conn. App. 419, 428 (App. Ct. 2000). "Section 31-76k [– referenced in Section 31-72 –] addresses payment for accrued fringe benefits upon termination of employment . . . , whereas § 31-72 relates to 'wages' as defined in § 31-71a(3)." Id. Section 31-76k provides that an employer must compensate an employee for any accrued "fringe benefits" if any "employer policy . . . provides for the payment of accrued fringe benefits upon termination, . . . and an employee is terminated without having received such accrued fringe benefits." Conn. Gen. Stat. § 31-76k.

For purposes of a wage claim under Section 31-72, Section 31-71a(3) defines "wages" as "'compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation.'" Del Rio v. Amazon.com Servs., Inc., 354 Conn. 151, 164 (2026) (quoting Conn. Gen. Stat. § 31-71a(3)). The term "'wages' as used in § 31-72 is [thus] limited on its face," and does not include "fringe benefits," such as vacation pay. Morales, 57 Conn. App. at 428 (citing Fulco v. Norwich Roman Catholic Diocesan Corp., 27 Conn. App. 800, 804 (App. Ct. 1992), appeal dismissed, 227 Conn. 404 (1993)). The term "wages" does include certain "nondiscretionary bonuses," however. Ass'n Res., Inc. v. Wall, 298 Conn. 145, 176 (2010).

To qualify as "wages" under Section 31-71a(3), "a compensation provision" providing for a bonus must satisfy three requirements: "(1) the award of compensation must be non-discretionary, (2) the amount of the compensation must be non-discretionary, and (3) the

amount of the bonus must be dependent on the employee's performance." Datto Inc. v. Braband, 856 F. Supp. 2d 354, 371 (D. Conn. 2012) (citing Wall, 298 Conn. at 173-77).

"A plaintiff must establish three elements to allege a prima facie case under Connecticut General Statutes § 31-72." Dalamagas v. Leonidas, No. 3:16-CV-00638(AWT), 2017 WL 1086323, at *2 (D. Conn. Mar. 22, 2017).

> First, the defendant must be an "employer" as defined by section 31-71a(1) and the person allegedly owed wages must be an "employee" as defined by section 31-71a(2). Second, the amount sought to be recovered must qualify as a "wage" under section 31-71a(3) or a fringe benefit payable under section 31-76k. Finally, the employee must be entitled to monies that were withheld wrongfully by the defendant employer.

Id. (quoting Butler v. Cadbury Bevs., Inc., No. 3:39-CV-2241(EBB), 1999 WL 464527, at *2 (D. Conn. June 29, 1999)). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a Section 31-72 claim must be pled with "specificity" and must assert more than "bare-bones allegations of a wage violation." Powanda v. Inteplast Grp., Ltd., No. 3:14CV846 JBA, 2015 WL 1525737, at *4 (D. Conn. Apr. 3, 2015) (citing Dejesus v. Hgmt. Servs., LLC, 726 F.3d 85, 86 (2d Cir. 2013)). "'Conclusory statements . . . do not suffice' to state a claim" under Section 31-72. Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

**B. Analysis**

In moving to dismiss Plaintiff's claim for wages and fringe benefits pursuant to Conn. Gen. Stat. §§ 31-72 and 31-76k, Defendants contend that Plaintiff is not entitled to any wages or fringe benefits arising out of the employee benefit plans at issue because she was classified as a temporary employee.[15] (Def. Br. (Dkt. No. 22) at 22-24) Defendants also argue

[15] Defendants also contend that Plaintiff's Connecticut law claim is preempted by ERISA (id. at 23-24), an argument that completely contradicts their assertion that the employee benefit plans at issue are not ERISA plans. (See id. at 15; Def. Reply (Dkt. No. 25) at 9, 12)

that Plaintiff has not "adequately allege[d] a claim" for wages or fringe benefits. (Id. at 23 ("Plaintiff cannot state a claim for unpaid benefits without specifying the particulars of those benefits.")) Plaintiff responds that the Complaint plausibly alleges "that she was a full-time, permanent employee," and lists "specific benefits owed" to such employees, including "vacation leave, paid time off, holiday pay, retention bonus, upon sale retention bonus, and severance." (Pltf. Opp. (Dkt. No. 29) at 27)

**1. Failure to Pay "Fringe Benefits" under Section 31-76k**

According to the Complaint,

> Defendants established and maintained various personnel policies and procedures to which Plaintiff and those similarly situated were subject. Defendants also established policies related to the Merger (collectively, the "Policies"), including but not limited to, Policies related to (a) Paid Holidays, (b) 401(k) Plan, (c) Annual Bonuses, (d) Employee Stock Option Plan, (e) Retention, (f) Upon Sale Retention Bonus, (f) COBRA Reimbursement, (g) Severance (h) Severance Stub Payment, (i) Merit Increases, (j) Out Placement Services, and (k) Remote Working Bonus.

(Cmplt. (Dkt. No. 1) ¶ 111) The Complaint further alleges that Defendants did not compensate Plaintiff in accordance with these policies, "both when [the fringe benefits] were earned and/or upon [her] separation[,] in violation of Conn. Gen. Stat. §§ 31-72, 31-76." (Id. ¶ 118)

As discussed above, however, "Section 31-76k addresses payment for accrued fringe benefits upon termination of employment." Morales, 57 Conn. App. at 428. And the Complaint does not allege that any of the referenced "personnel policies and procedures" (see Cmplt. (Dkt. No. 1) ¶ 111) "provide[] for the payment of accrued fringe benefits upon termination," Conn. Gen. Stat. § 31-76k, with the exception of the Severance Plan. As to the Severance Plan, the Complaint alleges that Defendants' "full-time permanent employees were

In any event, it is not necessary to reach Defendants' preemption argument because – as explained below – Plaintiff has not stated a claim for wages and fringe benefits under Connecticut law.

provided severance benefits under the Defendants' Severance Plan" (Cmplt. (Dkt. No. 1) ¶ 57), and that "Defendants' failure to provide Plaintiff with the benefits and payments under the Severance Plan" constitutes "a violation of Conn. Gen. Stat. §§ 31-72 and 31-76k." (Id. ¶¶ 59-60)

As discussed above, however, Plaintiff cannot demonstrate that she was entitled to benefits under the Severance Plan because she was "categorized by [Defendants] as a temporary employee," and the Severance Plan explicitly excludes "temporary employees" from coverage. (See VerGow Decl., Ex. D (Severance Plan) (Dkt. No. 27-1) art. II, § 2.8) (excluding "temporary employees" from coverage under the Severance Plan); Cmplt. (Dkt. No. 1) ¶ 27 ("Defendants classified Plaintiff as a temporary employee.")) Plaintiff thus cannot plausibly allege that she is "entitled" to any severance benefits "that were withheld wrongfully." See Dalamagas, 2017 WL 1086323, at *2 (citation and quotation marks omitted); see also Christensen v. Bic Corp., 18 Conn. App. 451, 458 (App. Ct. 1989) (finding that plaintiff could not recover a bonus under Connecticut law where he had not shown that he was entitled to a bonus under his employment contract).

As to the remaining fringe benefits cited by Plaintiff, the Complaint does not allege that any of the referenced "personnel policies and procedures" provide benefits upon termination. (See Cmplt. (Dkt. No. 1) ¶ 118)

Accordingly, Plaintiff's Connecticut law claim will be dismissed to the extent that Plaintiff asserts a claim for fringe benefits under Conn. Gen. Stat. § 31-76k.

### 2. Failure to Pay "Wages" under Sections 31-71a to 31-71i

The Complaint also asserts that Plaintiff is entitled to "wages" under Section 31-72 because of Defendants' "personnel policies and procedures." (Cmplt. (Dkt. No. 1) ¶ 111, 114) According to Plaintiff, under these policies and procedures, Plaintiff is owed "wages" and "pay,"

including "paid leave," "bonuses, merit increases, reimbursements, and other services." (Id. ¶¶ 116, 118) In her opposition brief, Plaintiff summarizes her claim for wages under Section 31-72 as follows: Defendants' "failure to pay Plaintiff her wages for the days she did not work due to a holiday, vacation or illness, and the non-discretionary bonuses and payments which all full-time, permanent employees received, violates Conn. Gen. Stat. § 31-71b." (Pltf. Opp. (Dkt. No. 29) at 26 (citation omitted))

Plaintiff has not plausibly alleged that any allegedly withheld paid leave, bonuses, or merit increases qualify as "wages" within the meaning of Conn. Gen. Stat. § 31-71a(3), however. She cannot assert a claim for wages premised on paid sick or vacation leave, as neither of those benefits amount to "wages" under Section 31-71a(3). See Morales, 57 Conn. App. at 428 (noting that employee benefits classified as "fringe benefits" under Section 31-76k – such as "vacation pay" – do not qualify as "wages" under Section 31-71a(3) (citing Fulco, 27 Conn. App. at 804)); see also Conn. Gen. Stat. § 31-76k (stating that "paid vacations, holidays, sick days and earned leave" are "fringe benefits")). Moreover, the Complaint does not allege that the bonuses and merit increases Plaintiff seeks were "non-discretionary" or "dependent on [Plaintiff]'s performance." See Datto Inc., 856 F. Supp. 2d at 371 (citing Wall, 298 Conn. at 176).

Plaintiff's remaining allegations concerning unpaid wages amount to "'[c]onclusory statements' that 'do not suffice' to state a claim" under Section 31-72. See Powanda, 2015 WL 1525737, at *4 (quoting Iqbal, 556 U.S. at 678). As noted, the Complaint asserts that Plaintiff is owed wages for "pay," "reimbursements," and "other services" under Section 31-72. (See Cmplt. (Dkt. No. 1) ¶¶ 111, 116, 118) But the Complaint does not specify what "pay" or "other services" Plaintiff is entitled to beyond compensation for the benefits discussed above which – for the reasons stated – do not fall with the purview of Conn. Gen. Stat. § 31-

71a(3). (See id. ¶¶ 114, 118, 120) Nor does the Complaint allege that Plaintiff incurred expenses that would entitle her to "reimbursements." (Id.)

For all these reasons, the Court concludes that the Complaint does not plead a claim for Section 31-72 "wages" with the necessary "specificity." Accordingly, Plaintiff's Connecticut law claim will be dismissed to the extent that Plaintiff asserts a claim for "wages" under Conn. Gen. Stat. § 31-72.

## V. LEAVE TO AMEND

Although Plaintiff has not requested leave to amend, the Court has considered whether she should be given an opportunity to do so. Under Rule 15 of the Federal Rules of Civil Procedure, leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). District courts "'ha[ve] broad discretion in determining whether to grant leave to amend.'" United States ex rel. Ladas v. Exelis, Inc., 824 F.3d 16, 18 (2d Cir. 2016) (quoting Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir. 2000)). "Where the possibility exists that [a] defect can be cured, leave to amend . . . should normally be granted" at least once. Wright v. Ernst & Young LLP, No. 97 CIV. 2189 (SAS), 1997 WL 563782, at *3 (S.D.N.Y. Sept. 10, 1997), aff'd, 152 F.3d 169 (2d Cir. 1998) (citing Oliver Schs., Inc. v. Foley, 930 F.2d 248, 253 (2d Cir. 1991)). Moreover, where a claim is dismissed on the grounds that it is "inadequate[ly] [pled]," there is "a strong preference for allowing plaintiffs to amend." In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig., No. 08 MDL 1963, 2011 WL 4072027, at *2 (S.D.N.Y. Sept. 13, 2011) (citing Ronzani v. Sanofi S.A., 899 F.2d 195, 198 (2d Cir. 1990)).

Leave to amend may properly be denied, however, in cases of "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of

the amendment, futility of amendment, etc.'" Williams v. Citigroup Inc., 659 F.3d 208, 213-14 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). A court may find amendment "futile" where any amended claim would not survive a motion to dismiss. Hutchison v. Deutsche Bank Sec. Inc., 647 F.3d 479, 491 (2d Cir. 2011).

It is not clear at this stage that any amendment to Counts II and VI would be futile. Accordingly, leave to move to amend Counts II and VI is granted. Any motion for leave to file an Amended Complaint will be filed by October 30, 2026, and will explain how the new pleading addresses the defects cited in this Opinion. The proposed Amended Complaint will be attached as an exhibit to the motion.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss (Dkt. No. 21) is granted in part and denied in part. The motion is granted as to Counts I, III, IV, V, and VI. The motion is also granted as to Count II to the extent that Plaintiff asserts a claim for benefits under the Severance Plan. The motion to dismiss is otherwise denied.

In accordance with Rule 16 of the Federal Rules of Civil Procedure, this court will conduct a case management conference in this case at **11:00 a.m. on October 22, 2026,** in Courtroom 705 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York.

By **October 19, 2026**, the parties will file a joint status letter and proposed Case Management Plan and Scheduling Order, in accordance with this Court' s Individual Rules of

Practice in Civil Cases. A model Civil Case Management Plan and Scheduling Order is available on the Court' s website (https://www.nysd.uscourts.gov/hon-paul-g-gardephe).

The Clerk of Court is directed to terminate the motion. (Dkt. No. 21)

Dated: New York, New York
September 30, 2026

SO ORDERED.

Paul G. Gardephe
United States District Judge